NO. 13-55373

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

IN RE EASYSAVER REWARDS LITIGATION

_____

Josue Romero; Deanna Hunt; Kimberly Kenyon; Gina Bailey;
Alissa Herbst; Grant Jenkins; Bradley Berenston; Jennifer Lawler;
Daniel Cox; Jonathan Walter; and Christopher Dickey,
*Plaintiffs-Appellees,*

Brian Perryman,
*Objector-Appellant,*
v.
Provide Commerce, Inc.; Encore Marketing International, Inc.; and
Regent Group, Inc.,
*Defendant-Appellees.*

_____

On Appeal from the United States District Court
For the Southern District of California, No. 3:09-cv-2094 AJB

_____

Brief of Plaintiff-Appellees

_____

Steckler Law Group LLP
Bruce Steckler
Mazin A. Sbaiti
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
(972) 387-4040
*Attorneys for Plaintiff-Appellees*
*[Other Counsel On Signature Block]*

# TABLE OF CONTENTS

**Page No.**

Table of Contents ................................................................................i

Table of Authorities ..........................................................................iv

Questions Presented ..........................................................................1

SUMMARY OF THE ARGUMENT ...................................................3

STATEMENT OF THE FACTS ...........................................................6

    A. Plaintiffs Were Unwittingly Enrolled in EasySaver Rewards While Trying To Claim a $15 Gift Code From a Provide Commerce Website ........................6

    B. After Years of the EasySaver Program, Plaintiffs and Their Counsel Were the First to Even Try and Do Anything To Stop It ....................................8

    C. The Settlement—the Result of Contentious Negotiations—Provides Class Members the Opportunity to Get 100 Percent of their Damages ........................9

        1. The Settlement Agreement Gives Class Members The Right to Claim Up to 100 Percent of their Damages and Replaces the $15 Gift Code ..........10

        2. The District Court Approved the Settlement and Requested Fees Using Both the Lodestar and Percentage of Recovery Methods ...........................11

    D. Perryman Files His Objection at the Last Minute, Three Months After Making A Claim for 100 Percent of His Damages ...............................................12

    E. The District Court Rejects All of Perryman's Objections After A Full Fairness Hearing ...............................................................................................13

STANDARD OF REVIEW .................................................................16

ARGUMENTS AND AUTHORITIES...................................................16

I.    The District Court's Finding That, Taken As A Whole, the Settlement Is Fair, Adequate and Reasonable Highlights Why This Court Should Affirm ...........17

II.    The District Court's Findings That The *CY Pres* Meets The Ninth Circuit Standard Of Providing A Relevant National Benefit Goes Unrefuted ....................20

    A. The *Cy Pres* Meets the Ninth Circuit's Standard................................20

i

B. The University Affiliations Perryman Attacks do not Evidence a Conflict Of Interest ................................................................................................22

    1. Perryman Has No Evidence of an Actual Conflict ..................................22

    2. No Decision Supports Perryman's Position.............................................23

C. Perryman's Contention that the Universities are "Too Local" Rests on False Factual and Legal Premises ....................................................................24

D. Perryman and Others Who Submitted A Claim Are Not Superior *Cy Pres* Recipients to the Three Universities ...................................................................26

III. This Court Should Affirm the District Court's Independent Award of Counsel's Lodestar Fees ............................................................................................28

A. The District Court Was Within Its Discretion To Approve Class Counsel's Lodestar Independent of the Percentage of Recovery Fees ...............29

B. Whether the $20 Credits are "Coupons" is Irrelevant—CAFA 28 U.S.C. § 1712(b) Unambiguously Authorizes Lodestar Fees...............................33

C. Plaintiff-Appellee's Reading of § 1712 Harmonizes All Facets of CAFA's Scheme and Advances of CAFA's Purposes ........................................39

D. Perryman Never Addressed Whether Lodestar Is Proper Under CAFA and the District Court's Lodestar Calculation—He Has Therefore *Waived* Them on Appeal..............................................................................42

IV. The District Court's Finding That This Is Not a Coupon Settlement Under CAFA Is Legally and Substantively Correct ............................................................43

A. The District Court Correctly Found That the $20 Credits Were Not Coupons and that CAFA Did Not Apply...........................................................45

B. Under Its Plain Meaning and CAFA's Legislative History, A "Coupon" Involves a "Discount" ......................................................................................46

C. Cases Have Consistently Held that Benefit of the Bargain Damages and Non-Cash Compensation Are Not "Coupons" Under CAFA ......................49

D. Perryman's Contention That $20 Credits Should be Valued As Coupons Abrogates Long-Standing Supreme Court and Ninth Circuit Precedent............51

E. Perryman's Trivial Quibbles Are Meritless........................................................53

ii

V.    This Court Should Not Invite This Trojan Horse In ...................................................55

CONCLUSION ...............................................................................................................58

# TABLE OF AUTHORITIES

## Cases

*Abrego v. Dow Chem. Co*.,

    443 F.3d 676, 684 (9th Cir. 2006) .....................................................................52

*Anderson v. Bessemer City*,

    470 U.S. 564 (1985) ................................................................................. 44, 49

*Been v. O.K. Indus.*,

    No. 02-285, 2011 U.S. Dist. LEXIS 115151, at *11 (E.D. Okla. 2011) ............33

*Blessing v. Sirius XM Radio, Inc.*,

    507 Fed. Appx 1 (2d Cir. 2012) ........................................................... 28, 37, 49

*Boeing Co. v. Van Gemert*,

    444 U.S. 472, 480 (1980) ..................................................................... 18. 19. 52

*Browning v. Yahoo! Inc.,*

    04-01463, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ......... 27. 50

*Chin v. United States*,

    57 F.3d 722, 725 (9th Cir. 1995) ....................................................................44

*City of Livonia Emples. Ret. Sys. v. Wyeth*,

    2013 U.S. Dist. LEXIS 113658 (S.D.N.Y. Aug. 7, 2013) ..................................33

*Exxon Mobil Corp. v. Allapattah Servs.,*

    545 U.S. 546 (2005) .......................................................................................35

*Fernandez v. Victoria Secret Stores, LLC*,

    06-04149, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) ...............50

*Fleury v. Richemont N. Am., Inc.*,

    05-4525, 2008 U.S. Dist. LEXIS 112459 (N.D. Cal. Aug. 6, 2008) ..................46

*Hanlon v. Chrysler Corp*.,

    150 F.3d 1011 (9th Cir. 1998) ................................................................ *passim*

*Hertzberg v. Dignity Partners*,

    191 F.3d 1076 (9th Cir. 1999) ............................................................34

*Houck v. Folding Carton Admin. Comm.*,

    881 F.2d 494 (7th Cir. 1989) ..................................................... 25. 26

*In re Airline Ticket Commission Antitrust Litig.*,

    268 F.3d 619 (8th Cir. 2001) ..................................................... 25, 26

*In re Baby Products Antitrust Litigation*,

    708 F.3d 163 (3d Cir. 2012) ................................................. 29. 30. 52

*In re Bisphenol-A Polycarbonate Plastic Prods. Liab. Litig.*,

    2011 U.S. Dist. LEXIS 50139 (W.D. Mo. 2011) ................................ 38, 48, 50

*In re Cadence Design Sys. Sec. & Deriv. Litig.*,

    08-4966, 2012 U.S. Dist. LEXIS 56785 (N.D. Cal. April 23, 2012) ...............33

*In re EasySaver Rewards*,

    921 F.Supp.2d 1040 (S.D. Cal. 2013) (Final Order) ..................................*Passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,

    55 F.3d 768 (3d Cir. 1995) ........................................................ 29, 36

*In re HP Inkjet Printer Litig.*,

    716 F.3d1173 (9th Cir. 2013) .................................................... 39. 40. 41. 42. 46

*In re HP Power Plug & Graphic Card Litigation*,

    06-02254, 2008 U.S. Dist. LEXIS 111427 (N.D. Cal. July 8, 2008), ......... 37, 50

*In re Lupron Mktg. & Sales Practices Litig.*,

    677 F.3d 21 (1st Cir. 2012).................................................... 22, 25, 27

*In re Pharma. Ind. Avg. Wholesale Price Litig.*,

    588 F.3d 24 (1st Cir. 2009)....................................................... 23. 27

*In re Southwest Airlines Voucher Litig.*,

    11-8176, 2013 U.S. Dist. LEXIS 120735, *4 (N.D. Ill. Aug. 26, 2013)............49

*In re Universal Service Fund*,

    02-1468, 2013 U.S. Dist. LEXIS 80204 (D. Kan. June 7, 2013) ......................25

*Lane v. Facebook*, *Inc.*,

    696 F.3d 811 (9th Cir. 2012) ........................................................ 16, 17, 23, 29

*Masters v. Wilhelmina Model Agency, Inc.*,

    473 F.3d 423 (2d Cir. 2007) .................................................................. 19, 52

*Mertens v. Hewitt Assocs.*,

    508 U.S. 248, 257-58 (1993) ................................................................. 39, 40

*Milliron v. T-Mobile USA*,

    423 Fed. App'x 131 (3d Cir. 2011) ..................................................................33

*Nachshin v. AOL, LLC*,

    663 F.3d 1034 (9th Cir. 2012) ..................................................... 21, 23, 24, 29

*Officers for Justice v. Civil Serv. Comm'n of S. Fran.*,

    688 F2d 615 (9th Cir. 1982)). ............................................................. 17, 18, 19

*Palisades Collections LLC v. Shorts*,

    552 F.3d 327 (4th Cir. 2008) ..........................................................................52

*Perez v. Asurion Corp.*,

    06-20734, 2007 U.S. Dist. LEXIS 66931 (S.D. Fla., 2007)........................ 38, 51

*Petersen v. Lowe's Hiw, Inc.*,

    11-01996, 2012 U.S. Dist. LEXIS 123018 (N.D. Cal. Aug. 24, 2012).............50

*Powell v. Georgia-Pacific Corp.*,

    119 F.3d 703 (8th Cir. 1997) ..........................................................................27

*Reibstein v. Rite Aid Corp.*,

    761 F. Supp. 2d 241 (E. D. Pa. 2011)....................................................... 48, 50

*Rosenfeld v. Comm'r of IRS*,

    11-73362, 2013 U.S. App. LEXIS 16461 (9th Cir. 2013)................................44

*Schwartz v. Citibank, N.A.*,

50 Fed. Appx. 832 (9th Cir. 2002).......................................................42

*Shames v. Hertz Corp.*

    2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012)............... 13, 45, 46, 48

*Six (6) Mexican Workers v. Arizona Citrus Growers*,

    904 F.2d 1301 (9th Cir. 1990) ...................................................... *passim*

*Synfuel Technologies., Inc. v. DHL Express (USA), Inc.,*

    463 F.3d 646 (7th Cir. 2006), ..........................................................52

*Thorner v. Sony Computer Entm't Am. LLC*,

    669 F.3d 1362 (Fed. Cir. 2012) .......................................................46

*True v. Am. Honda Motor Co.*,

    749 F.Supp.2d 1052 (C.D. Cal. 2010) ..............................................46

*United States v. Burke*,

    504 U.S. 229 (1992).......................................................................40

*United States v. Gonzales*,

    520 U.S. 1 (1997)...........................................................................34

*United States v. Kama,*

    394 F.3d 1236, 1238 (9th Cir. 2005)............................................ 42, 43

*Van Vranken v. Atl. Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1995).................................................33

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043, 1048-50 (9th Cir. 2002)........................... 30, 31, 33, 53

*Williams v. Taylor,*

    529 U.S. 420, 431 (2000)...............................................................46

## **Statutes**

28 U.S.C. § 1712........................................................... *passim*

Class Action Fairness Act,

Pub. L. 109-2, Feb. 18. 2005 ................................................... 43, 45, 52

Restore Online Shoppers Confidence Act,

Pub. L. 111-345, Dec. 29, 2010............................................................13

Cal. Civ. Code § 1780 ...............................................................................28

**<u>Other Authorities</u>**

Class Action Fairness Act,

S. Rep. 109-14 (2005)................................................... 40, 41, 42, 45, 52

## QUESTIONS PRESENTED

Issue Number 1:

> The Supreme Court and the Ninth Circuit have consistently held that class action settlements are evaluated under multiple criteria, and that the *entire* benefit given to the class must be fair, adequate and reasonable. ***Did the objector demonstrate that the district court clearly abused its discretion in holding that the entire settlement was fair, adequate and reasonable despite objector's objections to certain facets thereof?***

Issue Number 2:

> The district court found as a matter of fact that the three *cy pres* recipient universities' research funding would provide a national benefit to online privacy and information protection for the consumer class. ***Did the objector demonstrate that the district court's finding were clearly erroneous?***

Issue Number 3:

> The district court conducted a lodestar calculation, finding that counsel's hours and rates, and ultimate lodestar fees of approximately $4.2 million were reasonable, and their request for a 2.1 multiplier was at the low end of Ninth Circuit's range of reasonableness. Objector never attacked any of these issues. ***Has the objector waived these issues on appeal, or demonstrated how the district court's finding was clearly erroneous?***

Issue Number 4:

> CAFA, 28 U.S.C. § 1712(b) expressly authorizes the use of lodestar-plus-multiplier fees in coupon settlements where there is non-coupon non-equitable relief provided to the class, as an *alternative* to valuing the redeemed coupons. ***Has the objector waived this argument or demonstrated that the district court's award of lodestar fees was an abuse of discretion regardless of whether the $20 credits were "coupons" under CAFA?***

Issue Number 5:

> The district court found that the settlement was not a "coupon settlement" under CAFA and the $20 credits were not coupons under CAFA because they replaced in-kind the $15 gift codes every class member sought, they provided access to free products that the class demonstrably valued and were thus not "discounts," they would not enrich the defendants, they were fully transferrable, and could be used relatively freely on four different online storefronts. ***Has the Objector demonstrated that the district court committed clear error in its view of the record and finding that the $20 credits in this case were not "coupons" under CAFA?***

## SUMMARY OF THE ARGUMENT

After three and a half years of grinding litigation, over a year of settlement talks overseen by three federal judges, and a full fairness hearing, the district court finally approved settlement of this complex class action.

Each member of the 1.3 million person class made a purchase at Defendant Provide Commerce's websites, accepted an offer of a $15 gift code good towards their next purchase, but found themselves being charged $14.95 a month by Defendant Encore Marketing for a program they had never heard of called "EasySaver Rewards." This practice lasted several years and was not ended until this litigation got underway.

As direct benefits to the class, the settlement provides a non-reversionary $12.5 million damages fund, and a $20 gift code for each class member to replace the $15 gift code they requested. The district court found that the class relief was "narrowly tailored" to the allegations and conferred a "substantial benefit" on the class. The court approved the settlement and awarded fees of $8.65 million both as a percentage-of-recovery and based upon a lodestar of $4.25 million.

The Appellant, Brian Perryman is the sole objector here, yet he stands to receive 100% of his damages plus the very benefit that he requested. Perryman takes issue with the value and destination of the *cy pres*, and challenges the amount of class counsel's fees when calculated under the percent-of-recovery method.

Perryman's contentions fail for a variety of reasons:

***First***, the ***overall*** value fairness, adequacy and reasonableness of the settlement has never been disputed. In fact, Perryman stands to personally *gain* in this settlement. Thus, Perryman's collateral attacks on isolated features or imperfections of the settlement are not grounds to reverse the district court.

***Second***, Perryman concedes that unclaimed funds should go to *cy pres*. Yet he never identifies clear error in the district court's factual finding that the *cy pres* funding for internet privacy and protection research at three universities will benefit this national class of internet consumers. Instead, he raises irrelevant facts, changes the subject, or seeks new law entirely. These are facially specious and insufficient.

***Third***, in attacking counsel's fee award, Perryman overlooks the district court's award of lodestar fees, singularly focusing on whether the $20 credits are coupons relevant to the court's percentage of recovery calculation. But here,

- The district court was asked to, and did conduct two fee calculations based upon the record: percent-of-recovery and lodestar.

- Even assuming arguendo that the $20 credits are coupons, CAFA § 1712(*b*) affirmatively *authorizes* lodestar fees in settlements that include non-coupon, non-injunctive pecuniary relief.

- Because a lodestar calculation is based upon the value of counsel's time, it does not turn on the actual value of the redeemed coupons.

- Perryman ignored plaintiffs' discussion of lodestar and its propriety even under CAFA—he has thus ***waived*** this issue on appeal.

Thus, while Plaintiffs-Appellants insist that both of the district court's computations of counsel's fees are correct, the unscathed lodestar calculation renders Perryman's CAFA argument moot even assuming that the $20 credits are coupons.

**_Finally_**, the district court's percent-of-recovery award of fees was correct because the $20 credits are not coupons under CAFA. The district court found that the $12.5 million cash damages fund plus the $20 credits were "narrowly tailored" damages that replaced the money and $15 gift codes that every class member lost. The credits are good for $20 worth of **_free_** merchandise from Provide Commerce, which every class member demonstrably valued—and are not for EasySaver Rewards, which nobody valued. In other words, they are not the kind of small discounts on worthless product that would enrich the defendants. The Supreme Court and Ninth Circuit have long held that an award attorneys' fees is based upon the **_entire_** fund, and not just the portion used or claimed by absent class members. Accordingly, the district court properly valued the entire fund.

Perryman is conspicuously silent as to what legal standard the district court misapplied, or how its findings were clearly erroneous. In short, Perryman does nothing more than _disagree_ with the district court's conclusions. That is simply not enough to demonstrate that the court committed a clear abuse of discretion. For these reasons, this Court should affirm.

---

## STATEMENT OF THE FACTS

**A.     Plaintiffs Were Unwittingly Enrolled in EasySaver Rewards While Trying to Claim a $15 Gift Code From a Provide Commerce Website**

Plaintiffs-Appellees Josue Romero, Gina Bailey, Brad Berentson, Grant Jenkins, Jennifer Lawler, John Walters, Daniel Cox, and Christopher Dickey ("Plaintiffs") represent a class of approximately 1.3 million people. ER152. Each class member was shopping online on one of defendant Provide Commerce, Inc.'s websites, www.Proflowers.com, www.RedEnvelope.com, www.Sharies.com, or www.SecretSpoon.com, and each made a purchase. ER211-214.



Figure 1

After inputting their payment information and completing the transaction on the "checkout" page, each class member was presented with a "Thank You" gift code good for $15 towards a future purchase on one of the Provide Commerce websites. ER417 (Figure 1 above).

There is no dispute that 100% of the class members—all 1.3 million of them—intentionally clicked on the $15 gift code offer. However, clicking on the offer did not immediately get one the $15 gift code. Instead, one was directed to another page, where they were told they could claim their $15 gift-code by entering their email address and zip code, and clicking "Accept." ER202.

Again instead of receiving the discount, class members were immediately and unwittingly enrolled in a monthly membership program they had never heard of called EasySaver Rewards, which was separately run by defendant Regent Group, Inc. ("Encore Marketing"). EasySaver Rewards was an online "membership club" where enrollees were offered discounts on products and services.[1] Dkt. 221 (ER209). Provide Commerce electronically transmitted each enrollee's confidential payment information to Encore Marketing who immediately charged each person $1.95, and, 30 days later, $14.95 per month until they cancelled their membership.

---

[1] While plaintiffs conceded arguendo during the litigation that the website offers existed, the parties vociferously debated whether these offers had any real value.

**B.    After Years of the EasySaver Program, Plaintiffs and Their Counsel Were the First to Even Try and Do Anything To Stop It**

This program went on for three years. ER216-217. Many complained, but no one did anything about it until this lawsuit. Yet, just months after this case was filed, Provide Commerce and Encore Marketing terminated the EasySaver Rewards enrollment program. *See* ER48, ER63. The abrupt termination brought about by this litigation easily saved consumers millions of dollars in additional damages. Almost a year later, Congress passed the *Restore Online Shoppers Confidence Act*, Pub. L. 111-345 (December 29, 2010) ("ROSCA"). ROSCA made it a violation of the FTC Act § 5 to use "data pass," i.e., to transfer someone's payment information between websites as the defendants did here, and required any online entity charging someone's account to have obtained the account information directly from them.

Plaintiffs filed these cases in September 2009, and they were consolidated into a single action before the Southern District of California. Four attorneys were appointed as interim co-lead counsel: Bruce Steckler of Baron & Budd, P.C.,[2] Jennie Lee Anderson of Andrus & Anderson, LLP, James Patterson of The Patterson Law Group, and Michael Singer of Cohelan Khoury & Singer LLP. Dkt. 26.

---

[2] Mr. Steckler and his colleague, Mazin A. Sbaiti, left Baron & Budd and have continue to represent the class with their new firm, the Steckler Law Group.

The parties litigated the case for nearly three years. While the docket bespeaks volumes of activity in this hard-fought case, the parties also engaged in extensive discovery involving hundreds of thousands of documents, multiple hearsin, subpoenas and depositions all over the country. ER293-294.

## C.     The Settlement—the Result of Contentious Negotiations—Provides Class Members the Opportunity to Get 100 Percent of their Damages

Overall, counsel for the Plaintiffs invested thousands of attorney and paralegal hours prosecuting this case on behalf of Plaintiffs and the Class. Dkt. 255-2 (ER312-318); Dkt. 255-3 (ER326-330); Dkt. 255-4 (ER341-346); Dkt. 255-5 (ER375-379); Dkt. 255-6 (ER394-399).

The parties' settlement efforts were overseen by Magistrate Judge Gallo, with whom they met on four separate occasions between December of 2010 and October of 2011. (Dkts. 90 109, 131, 198). Judge Gallo's yeoman efforts moved the parties closer to resolution, but it took two more retired federal judges to finish the job, as they attended a mediation session before Judge Pappas (Ret.) on May 18, 2011, and finally reached an agreement in principle on April 9, 2012 in a mediation session with Judge Infante (Ret.). The parties finally reached a settlement in principle on March 9, 2013, before moving for preliminary approval on June 13, 2012. Dkt. 248.

## 1. The Settlement Agreement Gives Class Members The Right to Claim Up to 100 Percent of their Damages and Replaces the $15 Gift Code

The proposed settlement class consists of:

> All persons who, between August 19, 2005 and the date of entry of the preliminary approval order, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled by Regent Group Inc. dba Encore Marketing International, Inc. in one or more of the following membership programs: EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass.

*See* ER151 (Settlement Agreement § 1.7).

Under the settlement, defendants agreed to pay $12.5 million into a settlement fund which would pay class members' damages up to 100 percent of their out-of-pocket losses, as well as the costs of administration and attorneys' fees. ER152 (*Id.* § 2.1). To receive a refund, a class member needed only supply their name and email address, and check a box attesting that they did not intend to enroll in EasySaver and did not use it. ER158 (*Id.* at § 3.6).

In addition to cash payments for their damages, class members would automatically receive $20 credits, good for use at any of Defendant Provide Commerce's websites, which carry numerous products and items that were less than $20 and which a class member would therefore be able to get for free. *Id.*;

RE45, ER61 [3] The $20 value applies to the advertised price of products, ***even if they are already being offered at a discount*** which they often are. *Id.* The credits would be fully transferrable and good for an entire year, subject to certain limited blackout dates demanded by the defendants as part of the settlement. ER155.

The $12.5 million cash fund was non-reversionary—none of the unclaimed funds would return to the Defendants. ER155 (§ 2.1(e)). Any funds left over from the settlement fund would be distributed evenly to three *cy pres* recipients: the University of San Diego Law School, San Diego State University, and the University of California at San Diego. *Id.* Each of these schools has a national reputation, and draw of students. The funds would be specifically earmarked to fund research and prevention efforts in the arenas of online fraud and data privacy.

### 2. The District Court Approved the Settlement and Requested Fees Using Both the Lodestar and Percentage of Recovery Methods

Plaintiffs' motion for preliminary approval of the settlement was granted on June 26, 2012, Doc. No. 252, at which point the required notice was sent out. The preliminary approval order further required Plaintiffs to move for attorneys' fees by November 26, 2012. On November 26, 2012, Plaintiffs moved for attorneys' fees, submitting two requested independent calculations: the lodestar plus multiplier method and the percentage of the fund calculation. ER255-1.

---

[3] Testimony of defense counsel "[T]he reason we picked $20 is you can actually go onto these websites and buy something for $20".

In support of the lodestar figure, Plaintiffs provided written evidence of their hours spent on the litigation and their normal hourly fees, which the district court credited. *Id.; and see* Dkt. 252-2 through 6, ER317-318, ER330, ER346, ER379, ER399.

The district court issued its final order on February 4, 2013, approving the settlement and awarding attorneys' fees. *See In re EasySaver Rewards*, 921 F.Supp.2d 1040 (S.D. Cal. 2013) ("Final Order") (ER9-30). The district court awarded attorneys' fees first utilizing the factors for a percentage of the fund method, and then under a lodestar-plus-multiplier method. *Id*. at 1057, ER29. The district court found that the damages fund of $12.5 million was fair and reasonable, and that the $20 credits essentially replaced the $15 off gift codes, but on even better terms for class members. *Id.* at 1047-48 (ER16, ER17).

## D.    Perryman Files His Objection at the Last Minute, Three Months After Making A Claim for 100 Percent of His Damages

The settlement drew a single objector out of 1.3 million people who received class notice. Dkt 258 (ER108). On November 29, 2012, class member Brian Perryman, made a claim for all of his damages, totaling over $110, from the settlement fund. Dkt. 262-5 (ER282). Thereafter, he retained attorney Theodore

Frank to challenge the settlement. ER101 ¶ 3. Perryman filed his objection on the last day possible, December 7, 2012. ER108. [4]

Perryman objected on three grounds: that the *cy pres* was not proper, that the non-cash relief is essentially "coupons" under CAFA, and that the percentage of the fund that the attorneys were receiving was too high under CAFA. An attorney for Mr. Perryman appeared at the final approval hearing on January 28, 2013. ER40.

### E.    The District Court Rejects All of Perryman's Objections After A Full Fairness Hearing

In a well-reasoned opinion, the district court overruled all of Perryman's objections. *See generally* Final Order. ER17, ER23, ER24. The court first concluded that the settlement was fair and reasonable, and that the awarded attorneys' fees were not disproportionate to the results achieved:

---

[4]  Mr. Perryman's counsel, Theodore Frank, is the head of a non-profit law firm called the "Center for Class Action Fairness." Mr. Frank is a professional objector—e.g., someone who gets paid professionally to object to class actions— and indeed routinely raises objections. Although he vehemently denies being a professional objector, in an affidavit to the district, Frank proudly declares that, even though he is a lawyer, he does not earn legal fees representing his objector clients—instead, he admits that he is paid by anonymous **donors** to his non-profit law firm to object to and unravel large class action settlements. *See* ER95 ¶ 12. The more he objects successfully, the more these anonymous donors apparently will give him money. *Id.* The fact that he represents clients pro bono is hardly a feather in his cap—it underscore the fact that this appeal is driven not by the clients or the parties, but by the agenda and interests of those faceless financiers.

---

> Pursuant to these terms, class members may recover the entirety of their losses as well as achieve the additional benefit of the credit. As evidenced by the record, this case has been hotly contested over a period of several years. Understandably, class counsel put in a significant number of hours in order to achieve a beneficial result for the class. So long as the requested amount fits within the appropriate method for determining reasonable attorneys' fees, the Court can find no other basis for finding the requested fees to be unreasonable. Based on these considerations, the Court does not find that class counsels' requested fees are out of proportion to settlement achieved.

*Id.* at 1053-54 (ER23-24).

Regarding the *cy pres* distribution, the court found the proposal was proper and appropriately tailored to further the remedial purposes of the statutes underlying this lawsuit." *Id.* at 1049-50 (ER17-18). The court rejected Perryman's argument that some lawyers in this case having graduated from the University of San Diego Law School created a conflict of interest. *Id.* at 1051 (ER19-20). The court further found that the *cy pres* benefit would be national in scope. *Id.* at 1052-53 (ER13-14). Finally, the court found that the alternative allocations, including distributing the unclaimed funds to Perryman and other class members who submitted a claim, would result in an inappropriate windfall that would not benefit absent class members as much as giving the money to the universities to further research into internet privacy rights. *Id.* at 1053 (ER14).

The district court found that CAFA § 1712 did not apply because this was not a "coupon settlement." The court observed that the "primary" recovery in the case was the $12.5 million cash damages fund, and that combined with the $20 credits conferred "real and substantial value" on the class "in relation to their injuries." *Id.* at 1048, 1057 (ER16, ER17). The "secondary" relief was the $20 credits which were not coupons as CAFA envisioned, but actually ***benefit of the bargain*** damages "narrowly tailored to reflect the nature of Plaintiffs' allegations," and were thus intended to "serve[] as a replacement for the $15 'Thank You' gift credit that led to [class members'] allegedly unauthorized entry into the membership programs. *Id.* at 1048-49 (ER 16, ER17).

The district court further noted that it had conducted "rigorous scrutiny" of the $20 credits and found that they were not coupons in the typical sense because they were not "*discounts*…[where] class members are required to purchase the products and pay the difference between full and coupon-discounted price." *Id.* at 1048 (quoting *Shames v. Hertz Corp.* 2012 U.S. Dist. LEXIS 158577, *54 (S.D. Cal. Nov. 5, 2012)) (ER16). Rather, the court noted that the $20 credits were tantamount to "vouchers for free products," could be used to "purchase entire items under $20" and were "fully transferrable." *Id.* and *id.* at 1057 (ER16, ER29).

In addition to calculating the attorneys' fees under the percent-of-fund method, the court also found class counsel's fees and expenses reasonable under

the lodestar method. *Id.* at 1057 (ER 28). The court awarded fees of $8,650,000 and out-of-pocket expenses of $200,000. *Id.*

Rather than accept the district court's well-reasoned decision, Perryman appealed the final approval order.

## STANDARD OF REVIEW

It is well-established that a district court's approval of a class action settlement will only be set aside upon "a strong showing that the district court's decision was a clear abuse of discretion." *Lane v. Facebook*, *Inc., 696* F.3d 811, 818 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998)). The Ninth Circuit has "repeatedly stated that the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'" *Hanlon*, 150 F.3d at 1026-27.

The most crucial thing before this Court is the record on which the district court based its decision—if that supports the district court's final approval order, then it should be upheld even if this court disagrees with the district court's rationale. *See Hanlon*, *supra* (holding that "[a]lthough the district court's findings are almost conclusory, the record provides more than adequate foundation upon which to reach our conclusions. There is no value to be served in remanding this case for the entry of further self-evident findings.").

<u>**ARGUMENTS AND AUTHORITIES**</u>

**I.    THE DISTRICT COURT'S FINDING THAT, TAKEN AS A WHOLE, THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE <u>HIGHLIGHTS WHY THIS COURT SHOULD AFFIRM</u>**

Rule 23(e) requires a district court to determine whether a settlement is fair, adequate and reasonable. "It is the settlement, taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1025 (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F2d 615, 628 (9th Cir. 1982). "The settlement must stand or fall in its entirety." *Id.*

Here, the district court properly weighed the *Officers for Justice* factors: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625. The district court accordingly held that the relief to the class was fair, adequate and reasonable, and conferred a substantial benefit in light of the value of the claims being released:

> [T]he $20 credit in addition to the cash reimbursement fund provides fair, reasonable, and adequate relief to class members based on the nature of Plaintiffs' claims and status of the case.
>
> ....

> Based on the nature of the claims and the alleged harms, the Court concludes that [$12.5 million] cash fund reimbursement combined with the automatic $20 credit provided to every class member offers real and substantial value in relation to class members' injuries, and that the settlement as a whole is fair, reasonable, and adequate.

Final Order at 1047-49 (ER 15, 16-17). The district court concluded that, based upon *Officers for Justice* and *Hanlon*, the settlement taken as a whole was fair, adequate and reasonable. *See* Final Order at 1056 (ER27) (making enumerated findings).

Perryman does not directly attack these findings head on. In fact, he all but concedes the fairness, adequacy and reasonableness of the settlement by seeking 100% of his damages from the settlement fund and his $20 credit. Ignoring the fact that the Ninth Circuit, under *Officers for Justice*, considers nearly a dozen factors when approving a settlement, Perryman zeroes in on just a couple. He laments the amount of the settlement fund that is going to claimants is small as compared to *cy pres* and counsel's fees. But even there he is wrong about the significance.

The Supreme Court has held that the entire benefit conferred is what is relevant to determining the fairness and value to the class as a whole, *regardless of how many people make claims against the fund, how much goes to cy pres, or the amount of attorneys' fees if otherwise reasonable. See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("[Absent class members'] right to share the harvest of the lawsuit upon proof of their identity, **whether or not they exercise it**, is a benefit

in the fund created by the efforts of the class representatives and their counsel") (emphasis added). This Court in *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), citing *Boeing,* at 480*,* reiterated that in circumstances such as this, many people will not make claims and funds will go to *cy pres*, but that that does not diminish the value of the settlement or of class counsel's contribution. *See also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("the entire [settlement] Fund, and not some portion thereof, is created through the efforts of counsel").

Perryman principally relies on a Third Circuit case, *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2012), for the proposition that where a large portion of a fund goes to *cy pres* instead of class claims, then the settlement should not be approved. Yet that court expressly ***declined*** to do the very thing Perryman insinuates, holding that:

> We think it unwise to impose…a rule requiring district courts to discount attorneys' fees when a portion of an award will be distributed *cy pres*. There are a variety of reasons that settlement funds may remain even after an exhaustive claims process—including if the class members' individual damages are simply too small to motivate them to submit claims. ***Class counsel should not be penalized for these or other legitimate reasons unrelated to the quality of representation they provided***. Nor do we want to discourage counsel from filing class actions in cases where few claims are likely to be made but the deterrent effect of the class action is equally valuable.

*Id.* at 178. *See cf. Six (6) Mexican Workers*, 904 F.2d at 1311 (finding that small class claims often necessitate giving money to *cy pres* but awarding fees on entire benefit). Noting that counsel's fees should be cut only where there is sufficient evidence "that counsel has not met its responsibility to seek an award that adequately prioritizes a direct benefit to the class," the Third Circuit suggested reducing counsel's fees, and expressly advocated the use of lodestar to ensure the fairness of class counsel's fees. *See* 708 F.3d at 178-79. Here, the district court, *supra*, clearly found a substantial direct benefit to the class and used lodestar.

In short, taken as a whole, this settlement is fair, adequate and reasonable. It provides a $12.5 million damages fun and compensates people for their $15 gift cards. Neither the district court nor Plaintiffs-Appellees are required to show more than that. Thus, Perryman fails to demonstrate, as is his burden, why the district court's conclusions are clearly erroneous and are a clear abuse of discretion.

We now address Perryman's particular attacks.

## II.    THE DISTRICT COURT'S FINDING THAT THE *CY PRES* MEETS THE NINTH CIRCUIT STANDARD OF PROVIDING A RELEVANT NATIONAL BENEFIT GOES UNREFUTED

### A. The *Cy Pres* Meets the Ninth Circuit's Standard

The practical reality in a class action is that often, whether due to human tendencies towards procrastination, inertia, or some other combination of factors, "[m]ost class actions result in some unclaimed funds." *Six (6) Mexican Workers,*

904 F.2d at 1307. In response "a court may employ the *cy pres* doctrine," borrowed from the world of trust law, "to 'put the unclaimed fund to its next best compensation use, e.g., for the ***aggregate, indirect, prospective*** benefit of the class.'" *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2012) (citations omitted) (emphasis added).

This Court has explained that in order to serve its "next best" function, "*cy pres* distribution[s] must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id.* at 1039 (citing *Six Mexican Workers*, 904 F.2d at 1307) (footnote omitted). In internet-related cases, this Circuit has expressed approval for *cy pres* recipients drawn from "any number of non-profit organizations that work to protect internet users from fraud, predation, and other forms of online malfeasance." *Id*. at 1039.

The parties heeded these instructions. Because areas of consumer online privacy and data security are constantly in flux due to rapid technological advancement and slow legislative response, the parties agreed that *cy pres* funds would best serve absent class members by funding academic research addressing the contours and methods of protection in this space. ER155 § 2.1(e). Courts of appeal have repeatedly approved of this type of *cy pres* program, so long as there is a sufficient connection between the research and the underlying litigation. *E.g., In*

*re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21 (1st Cir. 2012) (approving *cy pres* funding of academic cancer research at Harvard and affiliated hospitals).

The district court found a sufficient nexus. Final Order at 1053 (ER22-23) Perryman does not levy a single, direct attack, looking instead to collaterally invalidate the *cy pres*.

## B. The University Affiliations Perryman Attacks do not Evidence a Conflict of Interest

Perryman hyperbolically contends that overlap between three lawyers out of the fourteen active ones in this case, and one of the three universities *cy pres* fosters an "intolerable" conflict of interest. This argument defies common sense, and it is unsupported in the evidentiary record and case law.

### 1.    Perryman Has No Evidence of an Actual Conflict

The district court correctly concluded as that there was no conflict, finding no "significant relationships with USD Law School beyond it being the alma mater of three attorneys out of the many associated with this case. There is no suggestion that counsel has any further relationship with the school than simply graduating from there." Final Order at 1051 (ER20).

Perryman offered no evidence that any attorney had any active participatory relationship with USD. Nor that any counsel stand to personally gain from funds going to USD. Perryman does not even suggest that they make it out to the occasional USD football game. The record is entirely devoid of even the slightest

proof of undue influence arising from three counsel having attended more than ten years ago. *Id.*

### 2.  No Decision Supports Perryman's Position

Perryman cites no case actually holding his way. Although he boldly asserts that the district court "depart[ed] from the considered opinions of ***several*** other courts," the court opinions to which he alludes are not to be found in his brief. Br. at 37. Indeed, he cites to no court opinion invalidating a *cy pres* award based upon the prior university affiliation of a lawyer or party to the litigation.

This Court's recent decision in *Facebook* wholly undercuts Perryman's argument. 696 F.3d 811 (*cert. pending*). There, the *cy pres* recipient was newly created for the purposes of the *settlement*, and directed to "promote the cause of online privacy and security." *Id.* at 821. Three of the board members consisted of plaintiff's counsel, lead defense counsel, and a Facebook executive. *Id.* at 818 and 829. This Court affirmed the *cy pres* distribution over objectors' mere allegation of a conflict of interest, holding that the entity was not "categorically an improper" *cy pres* recipient. *Id. See also In re Pharmaceutical Ind. Average Wholesale Price Litig.*, 588 F.3d 24, 30-32 (1st Cir. 2009) (class counsel's prior attorney-client relationship with the *cy pres* recipient was not a conflict absent additional evidence).

Avoiding *Facebook'* entirely, Perryman relies on a backwards reading of *Nachshin*. That suit involved AOL's placing advertisements into people's emails in violation of their online privacy rights. The eventual *cy pres* recipients included local Los Angeles shelters, Legal Aid Society, and Boys & Girls Clubs. 663 F.3d at 1040. This Court expressed its fear that "[w]hen selection of *cy pres* beneficiaries is *not* tethered to the nature of the lawsuit and the interests of the silent class members, the selection process *may answer to the whims and self-interests of the parties, their counsel, or the court*." *Id*. at 1036 (emphasis added). Perryman's suggestion that *any* historical association between counsel and a *cy pres* recipient, no matter how long ago or how tenuous, justifies undoing the settlement entirely is not found in *Nachshin* or any other case. *Id*. at 1036-39.

Thus, this specious objection was rightly overruled.

### C. Perryman's Contention that the Universities are "Too Local" Rests on False Factual and Legal Premises

The district court found that "the overall impact from the proposed *cy pres* distributions will not be limited to San Diego. [Rather,] [a]ll internet users will benefit from the proposed funding of ideas and research relating to consumer protection." Final Order at 1052 (ER22). Yet, Perryman contends that because they are in San Diego, the universities are too *local*. Br. at 40. This argument relies on a prevarication. The issue, as the First Circuit has noted, "is not the location of the

recipient…it is whether the projects funded will provide 'next best' relief to the class." *In re Lupron*, 677 F.3d at 38.

Clearly needing a lifeline, Perryman contorts two decisions to support his proposition that university research programs cannot receive *cy pres* even if they "theoretically would have a nationwide benefit to all consumers interested [in the case.]" Br. at 41 (citing *Houck v. Folding Carton Admin. Comm.*, 881 F.2d 494, 502 (7th Cir. 1989) and *In re Airline Ticket Commission Antitrust Litig.*, 268 F.3d 619, 625-26 (8th Cir. 2001)). This is clearly not the law, and is both absurd and impractical. *See In re Lupron*, 677 F.3d at 38-41 (finding that Harvard labs in Boston can have a national impact on cancer research); *In re Universal Service Fund*, No. 02-MD-1468-JWL, 2013 U.S. Dist. LEXIS 80204 (D. Kan. June 7, 2013) at *14 (observing that spreading *cy pres* awards too thin among many recipients would diminish the benefit to absent class members).

Moreover, his cases simply do not support his position. Far from foreclosing university research programs as legitimate *cy pres* projects, the Seventh Circuit in *Houck* explicitly held that "[t]he two law schools, Loyola and the University of Chicago, **are in no way disqualified from being the beneficiaries of some <u>new</u> appropriate cy pres use**". 881 F.2d at 502 (emphasis added). The reason the circuit court rejected the university-oriented *cy pres* had nothing to do with their Chicago location. Rather, that court had previously rejected a plan to use *cy pres* to fund a

stand-alone research center on antitrust law and policy because it found that the antitrust field was so flush with research funding that earmarking additional money via *cy pres* was akin to "carrying coals to Newcastle." 881 F.2d at 496-97. Perryman never argues that the demand for academic research into the fields funded by the *cy pres* in this case is likewise oversubscribed.

*In re Airline Ticket Commission Antitrust Litigation* is simply irrelevant. There, the district court was offered no, and saw no, relationship between sending money to a collection of travel agents in Puerto Rico, or a grouping of law schools in Minnesota, and the underlying claims for overcharges to U.S.-based travel agents. 268 F.3d at 630.

Thus, if anything, the Seventh and Eighth Circuits' decisions highlight how the parties and the district court in this case got it *right*.

### D. Perryman And Others Who Submitted A Claim Are Not Superior *Cy Pres* Recipients to the Three Universities

Although he stands to recover all his damages, Perryman contends the court should award him *more* money out of the *cy pres* funds, in effect arguing that he is a better *cy pres* recipient than the universities the parties designated via settlement. Br. at 43. The district court correctly found that Perryman and other class members who submitted a claim were not superior recipients of unclaimed funds. Final Order at 1053 (ER22-23).

The courts that have confronted this issue have overwhelmingly rejected the argument that plaintiffs who receive their full out-of-pocket damages are wronged when a settlement designates residual funds for *cy pres* rather than additional payouts to claimants. *See In re Lupron*, 677 F.3d at 34-35 (approving *cy pres* distribution where all class members submitting claims had already been fully compensated); *In re Pharmaceutical Industry*, 588 F.3d 24, 25-26 (1st Cir. 2009) ("The *cy pres* fund … is not taking damages away from the class members … [who can] claim and be paid their damages."); *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703, 705-06 (8th Cir. 1997) (upholding *cy pres* usage of remaining funds because claimants had already received all damages and "neither party ha[d] a legal right" to what remained). Even the American Law Institute, on which Perryman heavily relies, recognized that "[w]here class members *have* been fully compensated for their losses," the ALI policy preference simply "does not apply." *In re Lupron*, 677 F.3d at 32 (quotations omitted).

Perryman speciously claims that he has not been fully compensated because he should have also received punitive damages. This is a non-starter. *Hanlon*, 150 F.3d at 1025; *Six Mexican Workers,* supra; *Browning v. Yahoo! Inc.*, 04-01463, 2007 U.S. Dist. LEXIS 86266 at *6 (N.D.Cal. 2007) (gainsaying settlement compensation "is tantamount to complaining that the settlement should be 'better,' which is not a valid objection.").

## III.  THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S INDEPENDENT AWARD OF COUNSEL'S LODESTAR FEES

Perryman's appeal of counsels' fees takes singular aim at the role of the $20 credits—what he erroneously calls "coupons"—in the district court's percentage-of-recovery calculation. Perryman never addresses plaintiffs' extensive briefing below and the district court's finding that counsels' fees were wholly supported by a lodestar calculation. He has thus ***waived*** them on appeal. Moreover, CAFA § 1712(b), authorizes class counsel's entire fee simply on the basis of lodestar, as long as the class recovery is not in the form of a "coupon only" settlement—e.g., here, the settlement provides a $12.5 million cash fund to compensate plaintiffs for their out-of-pocket damages which are indisputably *not* coupons.

Thus, this Court can affirm the district court's approval of class counsel's fees on the lodestar method alone, without excavating the depths of the enigmatic question of whether the $20 credits in this case were "coupons" under CAFA, or whether this was a "coupon settlement." *See Hanlon*, 150 F.3d at 1026-27 (holding that Ninth Circuit will affirm class settlement approval on any basis supported by the record). In other words, even if this Court were to find that the $20 credits are coupons under CAFA, the district court's lodestar calculation still stands. *Blessing v. Sirius XM Radio, Inc.*, 507 Fed. App'x 1 (2d Cir. 2012) (finding that even if non-cash compensation was a "coupon" under CAFA, § 1712(b) allowed lodestar calculation without resort to the valuation of redeemed coupons).

**A. The District Court Was Within Its Discretion To Approve Class Counsel's Lodestar Independent of the Percentage of Recovery Fees**

The Ninth Circuit has "affirmed the use of two separate methods for determining attorneys fees" in a class action settlement: the "percentage of the fund" method or the "lodestar" method. *Hanlon*, 150 F.3d at 1029. A district court has discretion to use either. *Id.* There can be no doubt that lodestar is appropriate here because the litigation had societal and other non-quantifiable benefits, and certain claims independently awarded attorneys fees.[5] As Judge Sneed noted, "[l]odestar calculations may be required under circumstances in which a percentage recovery would be either too small or too large in light of the hours devoted to the case." *Six (6) Mexican Workers*, 904 F.2d at 1312 (concurring); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (lodestar appropriate where claims are based on statutes with fee shifting provisions).

The Ninth Circuit standard for calculating lodestar fees involves a multifold analysis that considers the qualitative direct benefit to the class. The non-monetary and societal benefits, the time, money and effort class counsel invested, the expertise needed, the riskiness of the litigation, and the fees awarded in similar

---

[5] This case was brought, inter alia, under fee-shifting statutes such as the California Consumer Legal Remedies Act, Cal. Civ. Code § 1780.

cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (outlining relevant factors).

In its Final Order, the district court approved the settlement, the $12.5 million cash damages fund, and $20 credits to replace the $15 gift codes customers originally requested, and awarded counsel's fees under both the lodestar and percent-of-recovery methods. Final Order at 1057, ER 28-29.

The district court did not conduct its lodestar calculation *sua sponte* or haphazardly. Rather, plaintiffs requested a lodestar calculation, noting that 28 U.S.C. § 1712(b) authorizes it in the event that the $20 credits were found to be "coupons." *See Plaintiffs' Mem. ISO Mot. for Atys' Fees*, Dkt. 255-1 at 4-8, 11-4 (ER295-299); *Plaintiffs' Mem. ISO Final Approval of Class Action Settlement and Plaintiffs' Unopposed Motion for Attys' Fees*, Dkt. 262 at 21. Class counsel also reiterated the propriety of the lodestar petition at the final approval hearing. ER46-48, 50-52, 62-64, 85 ("[lodestar] is an option for the court, to go…even if there are concerns about the nature of the vouchers.")).

Accordingly, Plaintiffs provided an extensive record demonstrating that:

- The results were excellent in light of the risks: a $12.5 million damages fund that would pay claimants 100% of their damages and a $20 credit to replace the "$15 off" gift code they initially accepted.

- The opinion of Judge Edward Infante (Ret.) about the difficulty of the case, the importance of the settlement, the fairness of the settlement, and the relative value of the consideration.

- Class counsel invested thousands of attorney and paralegal hours and over $200,000 into the case conducting extensive discovery all over the country.

- Class counsel's hourly rates were reasonable and within the reasonable range of rates charged for similar work.

- This litigation terminated a scam that was enrolling an average of 400,000 people each year.[6]

- Plaintiffs faced a serious risk of not gaining class certification.

- Comparable cases resulted in similar fee awards.

*See* Dkt. 255-1 at 4-8, 11-15 (ER295-299, ER302-306); Dkt. 255-2 through 255-6 (ER312-320, 326-332, 341-348, 375-381, 393-401, 416). These tracked the Ninth Circuit standards for lodestar fees under *Vizcaino*.

Here, the district court considered the Ninth Circuit's lodestar factors, and awarded counsel fees under the lodestar calculation in addition to the percentage-of-recovery method, finding that with respect to plaintiffs' request for the lodestar fees:

> The fees are also reasonable and supported when applying a lodestar crosscheck. Using the lodestar method, the Court finds that Class Counsel's hours and expenses were reasonable. The Court has considered the appropriate factors to determine that a multiplier of 2.1 is reasonable and appropriate given the results achieved and the risks undertaken by Class Counsel. (Final Order at 1057, ER29).

---

[6] This point was further credited by lead defense counsel. *See* Hearing Tr. (ER63).

---

This culminated from several findings, for example:

> [T]he relief offered by the $20 credits serves a specific purpose that is narrowly tailored to reflect the nature of Plaintiffs' allegations, specifically class members will receive a usable $20 credit of the type that was offered by the websites initially and subsequently caused them to be enrolled in the membership programs. (*Id.* at 1049 (ER17)).
>
> …
>
> In this instance, class counsel has certainly achieved a favorable result for the class members. As previously noted, there is a significant cash fund for class member claimants plus automatic $20 credits for every class member that add significant value to the overall settlement award... class members may recover the entirety of their losses as well as achieve the additional benefit of the credit (*Id.* at 1053 (ER23)).
>
> …
>
> As evidenced by the record, this case has been hotly contested over a period of several years. Understandably, class counsel put in a significant number of hours in order to achieve a beneficial result for the class. (*Id.,* (ER24)).
>
> …
>
> So long as the requested amount fits within the appropriate method for determining reasonable attorneys' fees, the Court can find no other basis for finding the requested fees to be unreasonable...the Court does not find that class counsels' requested fees are out of proportion to settlement achieved. (*Id.* at 1053-54 (ER24)).
>
> …
>
> The parties had nearly completed discovery including, but not limited to, the exchange of a large number of documents, numerous depositions, and expert disclosures…there are no governmental objectors; and …less than a fraction of one percent of the class objected to the settlement. (*Id.* at 1056 (ER28)).

The district court was thus well within its discretion to use the lodestar calculation. *Hanlon*, 150 F.3d at 1029. The district court's award of a 2.1 lodestar multiplier was likewise within its discretion. Notably, the 2.1 multiplier did not account for the hours spent on Final Approval, responding to Perryman's objections or to this appeal. In the Ninth Circuit, the acceptable range of multipliers is 1.0-4.0. *Vizcaino*, 290 F.3d at 1052 and n.6. Thus, for a large class action litigation such as this, a 2.1 multiplier is relatively conservative. *See id.* (approving **3.65** multiplier).[7]

### B. Whether the $20 Credits are "Coupons" is Irrelevant—CAFA 28 U.S.C. § 1712(b) Unambiguously Authorizes Lodestar Fees

Plaintiff-Appellants contend that the district court correctly ruled that the $20 credits were not coupons and that this was not a coupon settlement under CAFA. But even assuming *arguendo* that the $20 credits could be deemed coupons, CAFA § 1712(b) authorizes the lodestar fee awarded in this case:

---

[7] *See also Milliron v. T-Mobile USA*, No. 07 Civ. 10329 (RJS), 423 Fed. Appx 131, 135 (3d Cir. 2011) ("we have approved a multiplier of **2.99** in a relatively simple case"); *City of Livonia Emples. Ret. Sys. v. Wyeth*, 2013 U.S. Dist. LEXIS 113658, 11 (S.D.N.Y. Aug. 7, 2013) (lodestar multiplier of **3.45**); *In re Cadence Design Sys. Sec. & Deriv. Litig.*, No. C-08-4966 SC, 2012 U.S. Dist. LEXIS 56785, at *5 (N.D. Cal. April 23, 2012 (awarding counsel "**more than 2.88** times its lodestar amount"); *Been v. O.K. Indus.*, No. CIV-02-285-RAW, 2011 U.S. Dist. LEXIS 115151, at *11 (E.D. Okla. 2011) ("reporting average **multiplier of 3.89** in survey of 1,120 class action cases"); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the **3-4** range are common in lodestar awards for lengthy and complex class actions") (emphasis added in all).

---

(b) Other Attorney's Fee Awards in Coupon Settlements. –

(1) In general. – If a proposed settlement in a class action provides for a recovery of coupons to class members, and ***a portion of the recovery of the coupons*** is ***not*** used to determine the attorney's fee to be paid to class counsel, ***any*** attorney's fee ***award shall*** be based upon the ***amount of time*** class counsel reasonably expended working on the action.

(2) Court approval. – Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. ***Nothing in this subsection shall be construed to prohibit application of a lodestar with multiplier method of determining attorney's fees***.

28 U.S.C. § 1712(b)(1)-(2) (emphasis added).

On its face, Subsection (b) provides that whenever a court is basing fees on relief other than coupons—i.e., it is not using the coupons' value to award fees—then the *entire* fee award must be based upon the lodestar.[8] The statute's plain language ties the predicate when "a ***portion*** of the recovery of the coupons is ***not*** used to determine the attorney's fee," to the mandate that "***any***…fee award ***shall*** be based upon the" lodestar. 28 U.S.C. § 1712(b)(1) (emphasis added). As the Supreme Court and the Ninth Circuit have held, in a statute the term "any" means "all" unless it is expressly modified—it certainly does not mean some or part. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) (citations omitted); *Hertzberg v.*

---

[8] Subsection (c) further modifies this when the non-coupon relief is comprised of injunctive relief.

*Dignity Partners*, 191 F.3d 1076, 1980 (9th Cir. 1999) ("the court must accept the plain meaning of the word 'any.' In its conventional usage, 'any' means 'all'— used to indicate a maximum or whole. It certainly does not mean some.") (citations and quotations omitted).

Even if § 1712(b) seems ambiguous, this Court can look to the CAFA Senate Report which lays plain Congress's intent that lodestar can be a basis for calculating fees. *See Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 567 (2005) (courts should "look to other interpretative tools, including the legislative history" to construe ambiguous statutes).

Referring to subsection (b), CAFA's Senate Report states:

> In some cases, the proponents of a class settlement involving coupons ***may decline to propose that attorney's fees be based on the value of the coupon-based relief***[.]

> Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action[.]

> ***Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief***. As is stated on its face, nothing in this section should be construed to prohibit using the "lodestar with multiplier" method [.]

S. Rep. 109-14 (2005) at 30-31 (emphasis added). One could not hope for clearer explication.

Thus CAFA §1712(b) plainly contemplates that the district court may use the lodestar method as an ***alternative*** to valuing the coupon relief under section 1712(a) for calculating the percent-of-recovery fees where there is a direct non-coupon pecuniary benefit to the class. Congress clearly believed this. *See* CAFA Senate Report, S. Rep. 109-14 at 5 (CAFA… "ensure[s] that such fee awards are consistent with the benefits afforded class members *or* the amount of real work that class counsel have performed[.]") and at 77 ("If a proposed class action settlement provides coupons to a class member, the bill would require attorneys' fees to be based on the value of the coupons that are redeemed *or* on the amount of time reasonably expended working on the case by class counsel.") (emphasis added). Indeed, lodestar calculations are traditionally "de-coupled" from the actual value of the class recovery. *See In re GMC Pickup Truck*, 55 F.3d at 821.

Accordingly, there can be no doubt that § 1712(b) applies here because this is not a coupon-only settlement. The district court found that in this case, "[t]he primary relief provided in the Settlement Agreement is the availability of the [$12.5 million] cash payment." Final Order at 1057, ER28. Despite the fact that Perryman ignores this cash fund throughout his brief, it is incontrovertible that the $12.5 million damages fund and the payments therefrom are *not* coupons.

Though this is a nascent area of law, the courts that have addressed the issue have agreed with Plaintiffs-Appellees. ***First***, the Second Circuit reached the same

conclusion in *Blessing v. Sirius XM Radio*, 507 Fed. App'x. 1. The class alleged monopolistic overcharges related to defendant's satellite radio service. In overruling a Theodore Frank–led assault against allegedly excessive attorneys' fees, the circuit court noted that the class benefit of a subscription at a lesser price (which they called a "price freeze") could arguably be considered a coupon. *Id*. at 4. However, while the settlement included cash, most, if not all, was claimed as attorneys' fees and none went to the class because any one recovery would have been *de minimis*. The court held that that portion of the recovery was *not* being used to determine fees, which were instead calculated on a lodestar basis. *Id*. Observing that lodestar was appropriate under CAFA § 1712(b), it concluded that even if the subscription offer were a coupon, the use of the lodestar method rendered it immaterial. *Id*. at 4-5 (citing 28 U.S.C. § 1712(b)(1) and citing S. Rep. No. 109-14, at 30).

**Second**, in *In re HP Power Plug & Graphic Card Litigation*, No. C-06-02254 RMW, 2008 U.S. Dist. LEXIS 111427 (N.D. Cal. July 8, 2008), HP agreed to repair customers' damaged printers, pay damages up to $650 for those who already paid for repairs, or give customers who did not want either a $50 certificate. *Id*. at *5. After analyzing the language of § 1712(a)-(c), the district court concluded that the repairs were not "coupons," and the $50 certificate was incidental to the repairs—the primary relief—and that therefore lodestar was the

proper measure of attorneys' fees. *Id.* at *6-8 ("The court…finds using 'a lodestar with a multiplier method' to be appropriate for determining attorney's fees for plaintiffs' counsel in this case.") (citing § 1712(b)).

**Third**, in *In re Bisphenol-A Polycarbonate Plastic Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 50139 (W.D. Mo. 2011), the district court rejected the argument that product vouchers were "coupons" in the sense required by CAFA. *Id.* at *64-65. It reasoned in the alternative that:

> [28 U.S.C. § 1712(b)] supports the method used to calculate the fee award: the award is based primarily on the time expended and the attorneys' reasonable hourly fees, not on a percentage of the recovery. ***The award is proper even if the settlement is deemed to be a coupon settlement***.

*Id.* at *66-67 (emphasis added) (quoting 28 U.S.C. § 1712(b)(1)).

**Fourth**, in *Perez v. Asurion Corp.*, No. 06-20734-CIV-SEITZ/MCALILEY, 2007 U.S. Dist. LEXIS 66931 (S.D. Fla., 2007), a case where class counsel secured phone cards for class members, the court found: "Although the phone cards and vouchers supplied here are not literally 'coupons' . . . neither are they cash. ***Thus, CAFA gives the Court discretion to award fees using the lodestar method***." *Id.* at *5-6 (citing § 1712(b)) (emphasis added).

Therefore, there are no grounds for overturning the district court's award of lodestar fees to Plaintiff-Appellees, even if this Court were to believe that the $20 credits are "coupons" under CAFA.

### C. Plaintiff-Appellee's Reading of § 1712 Harmonizes All Facets of CAFA's Scheme and Advances CAFA's Purposes

Plaintiffs-Appellees' reading gives meaning to all of CAFA's subsections and scheme, and advances CAFA's purposes. After *In re Inkjet*, a coupon-only settlement would apply a percentage-of-recovery method, and value the redeemed coupons under § 1712(a).[9] *In re HP Inkjet Printer Litig.*, 716 F.3d1173, 1181-82 (9th Cir. 2013). On the hand, where the settlement consists only of coupons and injunctive or equitable relief—i.e., where the class still receives no direct pecuniary benefit, class counsel may claim percentage-of-recovery fees but only on the value of ***redeemed*** coupons, and must seek lodestar on the rest. *Accord id.* However, a party can opt to seek its lodestar fees under § 1712(b) instead of percentage-of-recovery where there is a direct non-coupon, and non-equitable pecuniary benefit such as damages provided to the class.

Because this settlement is not "coupon only," and the damages fund is not "equitable relief,"[10] subsections (a) and (c) would not apply to a case such as this one.

_____

[9] 28 U.S.C. § 1712(a) provides: "(a) Contingent Fees in Coupon Settlements. - If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed."

[10] There can be no doubt that a damages fund is not "equitable relief" under CAFA § 1712(c). The Supreme Court has held that absent express modification,

Any other reading of subsection (b), i.e., one that requires plaintiffs to base their fee award on the value of the redeemed coupons as opposed to the value of their time, would either read the word "any" out of § 1712(b), read the entirety of 1712(b) out of the statute, or make it redundant with subsection (a) or (c). *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 257-58 (1993) (giving every provision unique intended meaning and refusing to render any provision "superfluous").

Plaintiff-Appellees' reading of § 1712(b) furthers CAFA's main purpose: undoing the perverse incentives that resulted in situations where "class members...receive little to no benefit from [the] class action, [but]…counsel are awarded large fees[.]" *See* CAFA, Pub. L. 109-2, § 2. For instance, when plaintiffs' lawyers file a case, immediately settle for peanuts having done little work, yet reap large fees for their "success." *See* Senate Report at 15-20, 30.

The recoveries envisioned in §1712(b) and its lodestar provision are symbiotic: the class served by subsection (b) is assured a direct pecuniary recovery, rather than the potentially illusory benefits of a "coupon only" settlement

---

federal statutes providing for "equitable relief" refer to those remedies that were typically available to courts of equity—i.e., not compensatory damages. *See Mertens v. Hewitt Assocs.,* 508 U.S. 248, 252-53 (1993) (holding that ERISA statute authorizing "appropriate equitable relief" did not include damages). Damages have typically been held to be remedies at law, not at equity. *Id.* at 255 ("Money damages are, of course, the class form of *legal* relief.") (italics in original). *See also United States v. Burke*, 504 U.S. 229, 238 (1992) (construing Title VII grant of "any other equitable relief as the court deems appropriate" to preclude "awards for compensatory or punitive damages").

or a coupon plus "injunction" settlement. Counsel are guaranteed, as a baseline, the value of their time relative to the case. But the mandatory "all or nothing" nature of § 1712(b) means class counsel also cannot "game" the system by basing part of the fee award on "a portion of the coupons" in addition to claiming their lodestar. Thus, CAFA aligns the interests of class members and their attorneys.

The foregoing discussion highlights why Perryman's excessive reliance on *In re Inkjet* is misplaced. 716 F.2d 1173. There, the plaintiffs had specifically based their request for lodestar fee on the supposed value of a coupon settlement, approximately $16 million to $41 million. *Id*. at 1177. While the settlement included additional disclosures relating to ink cartridges and printers, the plaintiffs conceded that the sole benefit to the class was "coupons": $2, $5 or $6 discounts off of ink cartridges or printers which cost ten to a hundred times as much, were non-transferrable, and expired after six months. *Id.* at n.2.

The Ninth Circuit panel noted that Section 1712(a) applied to the "coupon only" settlement, and required the court to value only the redeemed coupons. *Id*. at 1180. Even if the practice changes in the settlement could be considered injunctive relief for the class, then subsection (c) applied (which incorporates subsection (a) for the coupon portion). *Id*. at 1181-83 and n13. Thus, *In re HP Inkjet* was not actually evaluating a claim for class counsel fees under § 1712(b) at all.

Most importantly, the panel in *In re HP Inkjet* did not have before it a settlement that included a $12.5 million damages cash fund. In fact, the court acknowledged that such a settlement mix would take the case beyond its purview, explaining that the case before it was a "coupon only" settlement:

> The dissent cites to a smattering of district court cases that hold that subsection (b) "allows the calculation of fees in a coupon settlement on the basis of [the] hours class counsel worked." Of course, that is hardly controversial, *as we now hold the same.*

*Id.* at n.13 (italics in original). Thus, despite Perryman's ubiquitous reliance on it, not only does *In re HP Inkjet* neither address nor govern the facts of this settlement, its holding is entirely consistent with Plaintiff-Appellants' position.

### D. Perryman Never Addressed Whether Lodestar Is Proper Under CAFA and the District Court's Lodestar Calculation—He Has Therefore *Waived* Them on Appeal

In order to preserve an argument for appeal, one must "specifically and distinctly" raise the argument before the district court and again in one's opening brief; otherwise it is waived. *See United States v. Kama,* 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief."); *Schwartz v. Citibank, N.A.*, 50 Fed. App'x 832, 835 (9th Cir. 2002) (specific challenge to major feature of class settlement not raised before district court waived it on appeal).

Here, Perryman failed to "specifically and distinctly" contest any of the issues surrounding the lodestar noted above—not the request for the calculation,

not the basis for the request under CAFA, not the evidence in support of the request, not the specific benefits for the class or the non-monetary societal benefits, not the effort and investment it took just to get this settlement, the complexity of the case, the fees in other cases, nor the risks involved.

The only argument Perryman did make—which he did outside the context of attacking the lodestar calculation—was the general contention that the fees were too high to be fair when compared to the cy pres and class claims. This has already been addressed. *See* Discussion part I, *supra*. That hardly counts as "specifically and distinctly" addressing the particular issues regarding the propriety of using lodestar under CAFA, the record support for it, or the calculation of the lodestar itself. *Kama,* 394 F.3d at 1238.

Therefore, Perryman has waived these issues on appeal. *Id.* [11]

## IV.  THE DISTRICT COURT'S FINDING THAT THIS IS NOT A COUPON SETTLEMENT UNDER CAFA IS LEGALLY AND SUBSTANTIVELY CORRECT

The district court awarded attorneys' fees under the percent-of-recovery method, holding that the $20 credits were in-kind or benefit of the bargain damages. Final Order at 1057, ER29. Although under CAFA § 1712(*b*), this Court

---

[11] Without waiving the *waiver* argument, we addressed the issues on the merits both from the desire to properly make our arguments for the record, and from an abundance of caution.

can simply affirm the lodestar fee award and be done, for the sake of argument and completeness, we show why the district court was well within its discretion in finding that the $20 credits were not "coupons" under CAFA and that this is not a "coupon settlement," and in its valuation of the $20 credits.

While this Court reviews approval of the class settlements as a whole for a "clear abuse of discretion," where one presents a mixed question that turns on evaluating the evidence in the record under a general legal principle, the issue is predominantly one of fact and is reviewed for clear error. *Chin v. United States*, 57 F.3d 722, 725 (9th Cir. 1995). As the district court noted, "although CAFA defines various other terms, it does not define what constitutes a 'coupon,'" Final Order at 1047 (ER15), which leaves it to the trial court to determine the applicability of the term based on the factual record before it and the totality of all circumstances, *Rosenfeld v. Commissioner of Internal Revenue*, No. 11-73362, 2013 U.S. App. LEXIS 16461 at *3 (9th Cir. 2013). Thus, this Court cannot overturn the district court "simply because it…would have decided the [issue] differently." *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985). Rather, it must affirm if the district court's conclusion is "plausible…in light of the [entire] record." *Id.*

Given this deferential standard, Perryman's vague assault on the district court's finding that the $20 credits are not coupons fails for several reasons.

## A. The District Court Correctly Found That the $20 Credits Were Not Coupons and that CAFA Did Not Apply

Finding that the $20 credits were not coupons under CAFA, the court explained that the primary relief was the $12.5 million cash fund, and the secondary benefit was the $20 credits that replaced the $15 codes; therefore, this was not the sort of settlement CAFA was intended to apply to. *Final Order.* at 1048 (ER16).

Substantively, the district court held that the $20 credits were a species of benefit of the bargain damages: "the Court further finds that the relief offered by the $20 credits serves a specific purpose that is narrowly tailored to reflect the nature of Plaintiffs' allegations, specifically class members will receive a usable $20 credit of the type that was offered by the websites initially and subsequently caused them to be enrolled in the membership programs." *Id.* at 1048 (ER17)

The court further found that he $20 credits were not coupons because they were not discounts on products that would enrich the defendants. Instead they were "vouchers for free products (as opposed to *discounts* on products where class members are required to purchase the products and pay the difference between the full and coupon-discounted price)," *id.* at 1048 (ER16) (citing *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577 *64 (S.D. Cal. Nov. 5, 2012)), and "are transferrable and may be used to purchase entire items without requiring the class members to spend additional money," *id.* at 1049 (ER17). Lastly, the court found

that "[m]ost importantly, the $20 credits are in addition to the cash fund reimbursement available to all class members." *Id.*

The court's findings are amply supported by the record, the statute, the legislative history, and the case law.

## B. Under Its Plain Meaning and CAFA's Legislative History, A "Coupon" Involves a "Discount"

The purpose in construing a statute is to effectuate Congress's purpose in passing the statute. *Williams v. Taylor,* 529 U.S. 420, 431 (2000). Where a term is undefined, courts "give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Id.* Courts have repeatedly observed that a word's ordinary meaning is not the same as a dictionary definition, it must be construed in context. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

The authorities cited by the district court show that the plain meaning of "coupon" involves a discount. *See* Final Order at 1048 (ER15) (citing *Shames,* 2012 U.S. Dist. LEXIS 158577 *54). Even the cases Perryman cites reflect the intuitive and common-sense reading that a coupon implies that there is a ***discount.*** *See In re HP Inkjet,* 716 F.3d at 1176 n.2 (parties conceded that $2, $5 and $6 discounts on defendants products priced 20 to 50 times the discount were coupons); *True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1069 (C.D. Cal. 2010) ($500 or $1000 discount on new Honda automobiles); *Fleury v. Richemont*

*N. Am., Inc.*, No. 05-4525, 2008 U.S. Dist. LEXIS 112459, *8 (N.D. Cal. Aug. 6, 2008) ($100 off multi-thousand dollar Cartier watches).

Furthermore, CAFA makes clear that "coupons" are a kind of award that would be "of little or no value" to class members in a class action. *See* Pub. L. 109-2 Feb. 18. 2005, § 2(a)(3). Indeed, CAFA's Senate Report lists a parade of horribles in class action abuse: instances where plaintiffs filed questionable lawsuits, settled quickly, gave class members nothing except small ***discounts*** on the very defective, dangerous or worthless products that the lawsuits were brought to vindicate in the first place, and then collected big fees based solely on the face value of the discounts—the coupons. *See* Senate Report 15-20.[12] Most importantly, as the report says repeatedly, in none of these class actions did the plaintiffs have any opportunity to recover cash. *Id.* These are the kinds of coupon settlements

---

[12] For example, $50 dollar discounts on expensive three day cruises (p. 16), $10 discounts on Microsoft products that are difficult to obtain (*id.*), $1 discounts on $5 beers, 30% discount to buy toys alleged to be defective (*id.*), free water from Poland Springs alleged to be misrepresented (p. 17), $55 discount on baby crib alleged to be unsafe given to class members unlikely to have another baby (*id.*), $1.25 off purchase of $25 video game (*id.*), $1 off new rentals in class action about excessive *late fees* that did not remedy the late fee charges (*id.*), $75 cents off crayons alleged to have asbestos (*id.*), $25 to $75 off expensive plane tickets (p. 18), $50 off future T.V. alleged to be defective in class action (p. 19), $19.95 discount coupons in class action over millions in credit card overcharges (*id.*), 8% rebates on purchasing expensive new plumbing for homes while plaintiffs' lawyers received $40 million in fees; $10 off $200 hotel rooms (id.), *the list goes on.*

---

Congress sought to deter, and they are readily distinguishable from the settlement here. *None of them offered the class cash.*

Yet, CAFA also expressly finds that "Class action lawsuits are an important and valuable part of the legal system." *See id.* § 2(a)-(b). CAFA's primary purpose is to "assure fair and prompt ***recoveries*** for class members with legitimate claims." *Id.* at § 2(b)(1). Lost property, opportunities, and rights are frequently legitimate "recoveries" in class actions when they are tied to the claims. *See* Senate Report at 31 ("it is not the intent…to forbid all non-cash settlements."). Something that might resemble a coupon in the abstract—but that has economic value or legal significance to the class—is plainly ***not*** what Congress had in mind when it sought to deter coupon settlements under CAFA.

Here, Class members are not "required to purchase the products and pay the difference between the full and coupon-discounted price" under the plain meaning of "coupon." Final Order at 1048 (ER16) (citing *Shames*, *supra* at *54). They are indisputably a near-cash equivalent, entitling the holder to a free product worth up to $20 without having to enrich the defendants if the holder does not want to. *Id.*; *accord In re Bisphenol-A Polycarbonate Plastic Prod., supra* at *47-48.

Nor are they for "a product or service with which [class members] were previously dissatisfied" or already rejected, as CAFA envisions. *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255 (E. D. Pa. 2011). The class action is about

unauthorized charges by defendant **Encore Marketing** for EasySaver Rewards; no one alleged dissatisfaction with defendant **Provide Commerce's** products or services, which by all accounts are of a standard customers seek in an online shopping experience. In short, the $20 credits can be used to buy products on one of *Provide Commerce's* websites—which everyone expressly wanted—and **not** for a membership or for use on *EasySaver Rewards*, which nobody wanted.

The evidence and reasoning supporting the district court's conclusions go uncontroverted. Perryman cites to no evidence that evinces a strong conviction that the court got it wrong. Thus, there is no basis to conclude that they were clearly erroneous. *Anderson*, 470 U.S. at 575, 576 ("plausible" findings that are "not contradicted by extrinsic evidence…can virtually never be clear error").

### C. Cases Have Consistently Held that Benefit of the Bargain Damages and Non-Cash Compensation Are Not "Coupons" Under CAFA

Given this context, it is not surprising that where non-cash compensation consisted of "benefit of the bargain" damages tailored to a particular claimed non-cash loss, the courts held that those were *not* coupons. *See, e.g., Blessing*, 507 Fed. Appx. at 5 (holding that agreement to allow customers to purchase service that they willingly signed up for was not a coupon); *In re Southwest Airlines Voucher Litig*., No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, *4 (N.D. Ill. Aug. 26, 2013) (finding that award of drink vouchers not a coupon settlement under CAFA because "this settlement differs from many coupon-based settlements in the sense

that the underlying loss itself involved a voucher; the settlement does not substitute a coupon for a pecuniary loss"); *In re: HP Power Plug*, 2008 U.S. Dist. LEXIS 111427 at *8 ($50 certificate ancillary to offer to repair broken printer did not render it a "coupon settlement" under CAFA); *Browning v. Yahoo! Inc.,* No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. November 16, 2007) (settlement offered in-kind compensation in the form of free credit reports or credit monitoring that plaintiff consumers had intentionally signed up for).

Similarly, where there was objective evidence that the defendant's products were of demonstrable value to the class, settlements that gave the class whole product without enriching the defendants were not coupon settlements. *See, e.g., Petersen v. Lowe's Hiw, Inc*., Nos. 11-01996, 11-03231, 11-02193, 2012 U.S. Dist. LEXIS 123018, *4 (N.D. Cal. Aug. 24, 2012) ($7 gift cards at Lowe's not coupons under CAFA); *In re Bisphenol-A Polycarbonate Plastic Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 50139 at *47-48 ("the vouchers…do not necessarily require the class members expend money of their own in order to realize the benefits of the settlement…[or] to use the vouchers on the same (or even similar) products to those that gave rise to this litigation."); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255-57 (E.D. Pa. 2011) ("Under these circumstances, the gift cards are more like 'cash' than 'coupons'" under CAFA); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546 (C.D. Cal.

July 21, 2008) (finding that every plaintiff was likely a customer of Victoria's Secret, and so $67.50 gift cards are not coupons under CAFA); *Perez v. Asurion Corp.*, 2007 U.S. Dist. LEXIS 66931 *6 (free phone cards that did not require customers to spend money with defendant "are not literally 'coupons'" under CAFA).

Here, the district court correctly found that the $20 credits were not "coupons" because they were "narrowly tailored" relief—i.e., benefit of the bargain damages—for the specific injuries alleged in this case, and because there was a demonstrated demand by the class for them as replacements for the $15 gift codes. Thus, the court did not commit clear error in finding that this was not a coupon settlement.

### D. Perryman's Contention That $20 Credits Should be Valued As Coupons Abrogates Long-Standing Supreme Court and Ninth Circuit Precedent

Apparently sensing the futility of arguing that the $20 credits replacing the $15 gift codes is not "coupon" relief of the sort CAFA envisioned, Perryman asks this court to make new law—specifically to hold that the court should still have only based its percent-of-recovery on the redeemed credits.

Perryman cites no Ninth Circuit or Supreme Court case for this proposition. However, what he asks for is new law that would undo long-standing Supreme Court and Ninth Circuit precedent. Under Boeing and *Six Mexican Workers* and their progeny, in common fund cases, counsel's fees are to be based upon the

*entire* value of the fund, regardless of the claims made against it, especially in cases such as this one where there may be ample reason for class members not to claim their cash awards or credits. *See Boeing Co.*, 444 U.S. 472, 479-78 and 82; *Six (6) Mexican Workers*, 904 F.2d at 1311; *see also Masters*, 473 F.3d at 437 and *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 180.

Perryman gives no grounds for adopting this new rule and reading CAFA so expansively. Congress knew how to legislate to include all non-cash relief when it enacted CAFA; yet it chose to limit itself to coupons. As this Court found in *Abrego v. Dow Chemical Co*, "CAFA … evidences detailed appreciation of the background legal context. Given the care taken in CAFA to reverse *certain* established principles but not others, the usual presumption that Congress legislates against an understanding of pertinent legal principles has particular force." 443 F.3d 676, 684 (9th Cir. 2006) (emphasis in original). Thus, this Court cannot simply *infer* that CAFA overturns pre-enactment case law. "If Congress wanted to overturn such precedent, it should do so expressly." *Palisades Collections LLC v. Shorts*, 552 F.3d 327 (4th Cir. 2008).

Perryman cites *Synfuel Technologies., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006), a pre-CAFA case for his proposition. But what he ignores is that the Seventh Circuit considered CAFA's language, not as yet in effect, and found that in-kind compensation would not be a coupon under CAFA. *Id.* at 653.

While it found that a *discount* on the value of the fund would be appropriate, *id.* at 653-54, what *Synfuel* did not hold is that there is a per se rule that non-cash compensation should be treated the same as CAFA treats "coupon" relief, *id*. Even following *Synfuel*: here, were the district court to discount the value of the credits by 40%, counsels' fees would still be 30% of the total fund value which is within this court's range of reasonableness for percentage of recovery fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d at 1047 ("in common fund cases…20-30% [is] the usual range.") (citations omitted).

Accordingly, Perryman has no legal or factual basis for undermining the district court's conclusion, much less showing clear error or an abuse of discretion.

### E. Perryman's Trivial Quibbles Are Meritless

Perryman complains that the $20 credits are *worthless* because there are blackout dates, they are not stackable with other discounts, and they cannot be used in part, among others. He cites no case holding that these issues are material, which undermines the thrust of his analytics. Perryman also ignores the now well-ensconced fact that over 1.3 million people (including Perryman himself!) requested the $15 credits on their own accord—yet they too bore limitations.

Addressing the issues specifically:

*First*, Perryman's implicit premise that people only send flowers, chocolates, gift baskets, food, cards, stationary, teddy bears and sweet things

during Christmas, Mother's Day and Valentine's Day is specious and unsupported in the record. The limitation is a practical one as the district court noted, the blackout dates were necessitated by the potential deluge of additional traffic which the codes would entail, and which would overwhelm the supply chain during peak times. *See* Hearing Tr. at 22 (ER61); Final Order at n.6 (ER 17). Thus, the demand for the blackout dates helps *confirm*, rather than detract from, the substantial value of the $20 credits to the class.

***Second***, Perryman is flat-wrong. The $20 gift codes *are* "stackable" with discounts already available on products on any one of the websites—which there frequently are. *See* Hearing Tr. (ER44-45); Final Order at 1045 (ER12). What they are not is "stackable" with are other codes—*i.e.*, discounts offered off-site intended to draw people to the website. But that was true of the original $15 gift codes as well. The limitation is due to the fact that the "checkout" pages on the websites— like nearly 100% of e-commerce sites—is, and has always been, programmed to only accept one code per purchase.

***Third***, the fact that the credits cannot be partially used misses the point entirely. The purpose of the $20 code was to get class members a free product, which was accomplished. *See* Hearing Tr. (ER45, ER61). The $20 code could have read: "Free Product Worth Up to $20!" and Perryman would have no objection. But plaintiffs wanted the class to have the freedom to choose something more

expensive if they wanted to and still use the $20 credit; that is why it is structured as $*20 same-as-cash*, thus making the $20 credits *more valuable to the class.* No one can deny that having more options for the class is more valuable than having fewer options.

The remainder of Perryman's lobs and volleys—e.g., that the $20 credits are not as valuable as other percentage-off coupons when used as discounts on really expensive things—are facially meritless.

## V.    THIS COURT SHOULD NOT INVITE THIS TROJAN HORSE IN

Throughout his Objection, Perryman portrays himself as a champion of the downtrodden class members who he says have been bamboozled by lawyers on both sides. He invites this Court to do *better* by consumers, but how?

By establishing a "bright-line rule" that a hard-fought settlement should be undone by even the slightest connection between a lawyer's *curriculum vita* and the *cy pres* recipient? Br. at 50.

By requiring that any *cy pres* award be diluted through circulation to all fifty states instead of focused and concentrated for a greater aggregate national impact? *Id.* at 51-53.

By setting precedent to unwind ***any*** settlement involving *cy pres* so long as 100% compensation for out-of-pocket damages remains insufficient to exhaust at

least one class member's tendency to prefer somewhat more of a pile of money to somewhat less? *Id.* at 43-47.

By stripping the district court who presided over the case of all discretion and declaring that ***any*** class benefit other than cash is a coupon or should be treated as such, even when the legislative intent of CAFA is manifestly otherwise? *Id.* at 20-29.

Perhaps by depriving class counsel of even their baseline compensation or incentive for undertaking socially important complex litigation? *Id.* at 29-35.

It is difficult to imagine that these proposals would be an improvement for average consumers who would see their access to legal counsel curtailed relative to entrenched corporate interests that overreach. But it is ***not*** difficult to imagine that these proposals might benefit those whose ***true*** mission it is to open a back door to attack any class settlement—or worse, to destabilize the landscape for all class actions and usher in their complete extinction.

No settlement is perfect, and the Objector here points to numerous alleged flaws supposedly under a banner of all class members' fundamental interests. One wonders if savvy consumers might remark instead, upon glimpsing the edifice that

Perryman has parked at their gate: "I fear the Greeks, even when they bring gifts."[13]

## CONCLUSION

Thus, this Court should affirm the district court's Final Order. Perryman's objection—the only one out of 1.3 million class members to do so despite standing to receive 100 percent of his damages—does not remotely approach raising a justification to find clear error.

---

[13] "Timeo Danaos et dona ferentes" *Aeneid* (II, 49) – Virgil.

Respectfully submitted:  September 11, 2013

By:___/s/ *Mazin A. Sbaiti*_____
    Bruce Steckler
    Mazin A. Sbaiti
    STECKLER LAW GROUP LLP
    12720 Hillcrest Road, Suite 1045
    Dallas, Texas 75230
    Tel:  (972) 387-4040
    Fax: (972) 387-4041
    Bruce@Stecklerlaw.com
    Mazin@Stecklerlaw.com

    *On Behalf of Plaintiff-Appellees*

James R. Patterson, (SBN 211102)
THE PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone:  (619) 756-6990
Facsimile:  (619) 756-6991
jim@pattersonlawgroup.com
alisa@pattersonlawgroup.com

Isam C. Khoury, (SBN 58759)
COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101
Telephone:  (619) 595-3001
Facsimile:  (619) 595-3000
ikhoury@ckslaw.com

Jennie Lee Anderson, (SBN 203586)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:  (415) 986-1400
Facsimile:  (415) 986-1474
jennie@andrusanderson.com

## STATEMENT OF RELATED CASES PURSUANT TO
## NINTH CIRCUIT RULE 28-2.6

Plaintiff-Appellees state that they do not know of any related cases pending in this court.

Dated:  September 11, 2013                    STECKLER LAW GROUP, LLP


By:___/s/  Mazin A. Sbaiti_____
       Mazin A. Sbaiti

Attorneys for Plaintiff-Appellees

**Certificate of Compliance**
**with Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

      This brief contains 13,538 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

**Proof of Service**

I hereby certify that on September 11, 2013, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers. Additionally, I caused to be sent a copy of the foregoing via first class mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-registered attorneys:

Ethan Thomas Boyer
Post Kirby Noonan & Sweat
600 West Broadway, Suite 1100
San Diego, CA 92101-3355

Michael L. Kirby
Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101

Elliott Louis Pell
Jay J. Rice
Nagel Rice LLP
103 Eisenhower Parkway
Roseland, NJ 07068

Jacie C. Zolna
Myron M. Cherry & Associates
30 N. La Salle Street, Suite 2300
Chicago, IL 60602

*/s/ Mazin A. Sbaiti*